STEPHEN S. SMITH (SBN 166539)
LAW OFFICES OF STEPHEN S. SMITH, P.C.
303 North Glenoaks Blvd., Suite 200
Burbank, CA 91502
Telephone: (310) 955-5824
Fax: (310) 955-5824
Email: ssmith@stephensmithlaw.com

*Attorneys for Defendant*
*Janice Feldman*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANUS ET CIE<br><br>             Plaintiff,<br><br>   v.<br><br>JANICE FELDMAN ,<br><br>             Defendant<br>_____<br>JANICE FELDMAN,<br><br>             Counterclaimant,<br><br>   v.<br><br>JANUS ET CIE,<br><br>             Counterdefendant. | Case No. 2:23-cv-6000 PA (ASx)<br><br>**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Date:  October 16, 2023<br>Time: 1:30 p.m.<br>Courtroom: 9A |

# TABLE OF CONTENTS

Page

I. Section 6.05 of the Employment Agreement Bars This Action ...................... 1

    A. JEC Ignores the Applicable Michigan Law .......................................... 1

    B. Section 6.05 Must Be Enforced "As Written" ...................................... 1

    C. Section 6.05 Was Not "Part of One Overall Transaction" with Section 5(c) of the Design Agreement .......................................... 2

    D. Enforcing Section 6.05 Would Not "Eliminate" Section 5(c) ............. 3

    E. Section 6.05 Is an Explicit Waiver of M.C.L.A. § 600.5855 ............... 3

II. Section 5(c) of the Design Agreement Also Bars This Action ...................... 4

    A. The Discovery Rule Does Not Apply ................................................... 4

    B. JEC Was on Notice of Its Claims Prior to August 9, 2020 .................. 6

    C. The Continuous Accrual Doctrine Does Not Apply ............................. 6

        1. JEC Does Not Allege That Feldman Submitted a Request for Approval of Any Designs After August 9, 2020 ............................................................................. 6

        2. JEC's Claim to Recover "Improper" Payments It Made to Feldman Is Barred Because Its Claim That Such Payments Were "Improper" Is Barred ......................................... 6

    D. If the Continuous Accrual Doctrine Applied, Which It Does Not, Then Section 5(c) Would Require Dismissal of JEC's Claims to the Extent They Accrued Before August 9, 2020 ................................ 8

III. Section 6.05 and Section 5(c) Bar JEC's Third Claim ................................... 8

IV. Section 6.05 and Section 5(c) Bar JEC's Fourth Claim .................................. 9

LAW OFFICES OF STEPHEN S. SMITH, P.C.
303 North Glenoaks Blvd., Suite 200
Burbank, California 91502

V. JEC's Third Claim Must Be Dismissed Pursuant to FRCP 9(b) and 12(b)(6) .................................................................................... 10

    A. JEC Must Comply with Rule 9(b) ........................................................ 10

    B. JEC's Third Claim Does Not Comply with Rule 9(b) Nor State a Claim Upon Which Relief Can Be Granted ..................................... 11

VI. Conclusion ....................................................................................................... 12

# TABLE OF AUTHORITIES

**CASE LAW**

Page

Allstate Ins. Co. v. Broe,
  2008 WL 3876188 (Mich. Ct. App. 2008) ..................................................... 4

Aryeh v. Canon Business Solutions, Inc.,
  55 Cal.4th 1185 (2013) ................................................................................. 8

Baxter v. California State Teachers' Retirement System,
  18 Cal.App.5th 340 (2017) ........................................................................ 6, 8

Board of Trustees v. Santa Cruz Underground & Paving, Inc.,
  2022 U.S. Dist. LEXIS 114274 (N.D.Cal. June 28, 2022) ...................... 4-5

Brisbane Lodging, L.P. v. Webcor Builders, Inc.,
  216 Cal.App.4th 1249 (2013) .................................................................. 4-5

Cansino v. Bank of America,
  224 Cal.App.4th 1462 (2014) ..................................................................... 11

Carrick v. San Francisco,
  202 Cal.App.2d 402 (1962) .......................................................................... 7

Clark v. DaimlerChrysler Corp.,
  268 Mich. App. 138; 706 N.W.2d 471 (2005) ............................................. 2

County of San Diego v. Myers,
  147 Cal.App.3d 417 (1983) .......................................................................... 7

Dillon v. Board of Pension Commrs.,
  18 Cal.2d 427 (1941) .................................................................................... 7

Erlich v. Menezes,
  21 Cal.4th 543 (1999) ................................................................................. 11

Evox Prods. LLC v. Chrome Data Solutions,
  2018 U.S. Dist. LEXIS 197882 (D.Or. Sept. 6, 2018) ............................. 4-5

Farm Bureau Mut. Ins. Co. v. Nikkel,
  460 Mich. 558; 596 N.W.2d 915 (1999) ................................................... 1-2

LAW OFFICES OF STEPHEN S. SMITH, P.C.
303 North Glenoaks Blvd., Suite 200
Burbank, California 91502

Freeman & Mills, Inc. v. Belcher Oil Co.,
    11 Cal.4th 85 (1995)...................................................................................... 11-12

Guardian Fin. Co. v. Metzger,
    2018 Bankr. LEXIS 3335 (S.D.Oh. September 4, 2018) ..............................1

Hambrecht & Quist Venture Partners v. American Medical International, Inc.,
    38 Cal.App.4th 1532 (1995) ……..................................................................1

Howard Jarvis Taxpayers Ass'n v. City of La Habra,
    25 Cal.4th 809 (2001) ……….......................................................................8

Macguire v. v. Hibernia S. & L. Soc.,
    23 Cal.2d 719 (1944)……….........................................................................9

Rivera v. Peri & Sons Farms, Inc.,
    735 F.3d 892 (9th Cir. 2013)........................................................................8

Rory v Continental Ins. Co.,
    473 Mich. 457; 703 N.W.2d 23 (2005) ………......................................... 1-2

Seaman's Direct Buying Service, Inc. v. Standard Oil Co.,
    36 Cal.3d 752 (1984) ………......................................................................12

Snyder v. California Ins. Guarantee Assn.,
    229 Cal.App.4th 1196 (2014)………...........................................................9

Thurman v. DaimlerChrysler, Inc.,
    397 F.3d 352 (6th Cir. 2004) ………...................................................... 2-9

Vess v. Ciba-Geigy Corp.,
    317 F.3d 1097 (9th Cir. 2003) ………......................................................10

Wind Dancer Production Group v. Walt Disney Pictures,
    10 Cal.App.5th 56 (2017) ………........................................................... 4-5

/ / /

/ / /

/ / /

/ / /

REPLY ISO MOTION TO DISMISS FIRST AMENDED COMPLAINT

**STATUTES AND OTHER AUTHORITIES**

Fed. R. Civ. Pro. 9(b) ………………............................................................................... 10-11

Fed. R. Civ. Pro. 12(b)(6) ………………...........................................................................10

Cal. Pen. Code § 496 ………………................................................................................8

Cal. Pen. Code § 484 ………………...............................................................................10

M.C.L.A. § 600.5855 ………………............................................................................ 3-4

LAW OFFICES OF STEPHEN S. SMITH, P.C.
303 North Glenoaks Blvd., Suite 200
Burbank, California 91502

# MEMORANDUM OF POINTS AND AUTHORITIES

JEC's opposition to the Motion to Dismiss fails to provide any persuasive reasons to deny the motion. Therefore, the motion should be granted.

## I. Section 6.05 of the Employment Agreement Bars This Action.

In Section 6.05 of the Employment Agreement, JEC agreed not to commence any action "relating to" Feldman's employment more than 18 months after the end of her employment. Exhibit 1 to RJN at § 6.05. JEC does not argue that this action is not "relating to" Feldman's employment. It admits it is. Opp. at 8:25-9:2; 11:25-12:2. Nor does JEC claim that it filed this action within 18 months of the end of Feldman's employment. It indisputably did not. Instead, JEC makes a series of facile legal arguments that have no merit.

### A. JEC Ignores the Applicable Michigan Law.

JEC argues that "Michigan law is irrelevant" because JEC makes no claim "under" the Employment Agreement. Opp. at 12:24-13:3. But that is the exact issue to be decided – i.e., whether Section 6.05 applies to JEC claims. That issue must be determined under Michigan law because Section 6.08 of the Employment Agreement and California law requires it. Exhibit 1 to RJN at § 6.08; *Hambrecht & Quist Venture Partners v. American Medical International, Inc.*, 38 Cal.App.4th 1532, 1538-1550 (1995). Yet, JEC fails to cite any Michigan law regarding the applicability of contractual limitation provisions and relies solely on California law, which does not apply to the issue presented.

### B. Section 6.05 Must Be Enforced "As Written."

Under Michigan law, an unambiguous provision shortening the limitation period must be enforced "as written." *Rory v Continental Ins. Co.*, 473 Mich. 457, 470-71; 703 N.W.2d 23, 31-32 (2005). Under Michigan law, "[w]hether contract language is ambiguous is a question of law." *Farm Bureau Mut. Ins. Co. v. Nikkel*, 460 Mich. 558, 563; 596 N.W.2d 915, 918 (1999). Words used in a contract are to be given "their plain and ordinary meaning." *Rory,* 473

Mich. at 664; 703 N.W.2d at 28. "[I]f a contract, however inartfully worded or clumsily arranged, fairly admits of but one interpretation it may not be said to be ambiguous . . . ." *Farm Bureau*, 460 Mich. at 566; 596 N.W.2d at 919.

Section 6.05 is not ambiguous. It admits of but one interpretation. It applies to any action "relating to Executive's employment with Corporation." It is not limited to any particular legal claim. It does not exclude claims for breach of the Design Agreement.

Throughout its opposition, JEC argues that Section 6.05 applies only to claims for "breach" of the Employment Agreement. But Section 6.05 is not so narrow. It applies to any action "relating to" Feldman's employment. Such language has been held to apply to *any* claim that relates to employment, not just claims for breach of contract. *Clark v. DaimlerChrysler Corp.*, 268 Mich. App. 138, 140-142; 706 N.W.2d 471, 473-474 (2005) (applying "relating to" provision to claim for discrimination); *Thurman v. DaimlerChrysler, Inc.*, 397 F.3d 352, 357 (6th Cir. 2004) (applying "relating to" provision to claims for sex and race discrimination, negligent hiring/retention, negligent supervision, assault and battery, negligence, gross negligence and loss of consortium).

C. **Section 6.05 Was Not "Part of One Overall Transaction" with Section 5(c) of the Design Agreement.**

In an effort to create an ambiguity where none exists, JEC represents *falsely* that the Employment Agreement and Design Agreement were "both executed as of May 2, 2016, and were clearly part of one overall transaction." Opp. at 9:26-27. Relying on this false premise, JEC then argues that the two provisions must be "taken together" and interpreted as a "whole" to "give effect to every part." Opp. at 9:12-10:7. According to JEC, when one does that, one must conclude that only Section 5(c) applies to this action. *Id.*

But JEC *knows* that its underlying premise is false. *JEC alleges* that the two agreements were "separate and independent" and were entered into *years*

2
REPLY ISO MOTION TO DISMISS FIRST AMENDED COMPLAINT

apart. FAC ¶ 14, 18-19. The amended and restated Design Agreement was entered into on August 16, *2016*. FAC ¶ 18. The revised and restated Employment Agreement was entered into on July 1, *2019*. FAC ¶ 14.[1]

### D. Enforcing Section 6.05 Would Not "Eliminate" Section 5(c).

JEC argues that applying Section 6.05 would "involve an 'absurdity,' because it would eliminate entirely" Section 5(c) from the Design Agreement and would render Section 5(c) "superfluous." Opp. at 9:4-12. Again, JEC is wrong. Section 6.05 applies to any action "relating to" Feldman's employment. Exhibit 1 to RJN, § 6.05. Section 5(c) applies to any suit "in connection with a breach by a party under this Agreement." Dkt. 1-1, Exhibit A, § 5(c). An action might fall under only one of these provisions, or it might fall under both. There is nothing "absurd" about that.

At the time the parties agreed to Section 6.05 in July 2019, they knew what Section 5(c) said. Yet, Section 6.05 bars any action "relating to" Feldman's employment and does *not to exclude* claims for breach of the Design Agreement. So, if a claim for breach of the Design Agreement relates to Feldman's employment, which JEC's claims do, then Section 6.05 applies.

### E. Section 6.05 Is an Explicit Waiver of M.C.L.A. § 600.5855.

The purpose of a contractual limitation provision is to *not* be bound by the otherwise-applicable statutes of limitation. Section 6.05 explicitly states this purpose. Each party "agrees to waive any statute of limitations to the contrary." Exhibit 1 to RJN at § 6.05. Yet, JEC argues that the statute of limitations in M.C.L.A. section 600.5855 overrides Section 6.05 and allows JEC to commence this action within 2 years after its discovery of its claims.

---

[1] Moreover, Section 6.05 was one of the provisions that was changed in the revised and restated Employment Agreement. *Compare* Exhibit 1 to RJN, § 6.05 to Exhibit 5 to RJN, § 6.05. Where the limitation provision had originally benefitted only JEC, it was amended to benefit Feldman too. *Id.*

But JEC provides no support for this argument. Nothing in Section 600.5855 suggests that it applies when there is a contractual limitation provision waiving any statute of limitation to the contrary. And the case JEC cites – *Allstate Ins. Co. v. Broe*, 2008 WL 3876188 (Mich. Ct. App. 2008) – does not so hold. There was no contractual limitation provision in that case; and there was no discussion of Section 600.5885. This statute of limitation does not apply.

**II.      Section 5(c) of the Design Agreement Also Bars This Action.**

Section 5(c) of the Design Agreement provides that neither party may file a lawsuit "in connection with a breach by a party under this Agreement unless the party commences suit within two (2) years after the date when such alleged breach occurred." Exhibit A to FAC § 5(c). JEC alleges that Feldman breached the Design Agreement "well before" 2019. Opp. at 15:26-28, fn. 2. Therefore, this lawsuit is barred unless there is an exception to the application of Section 5(c). JEC argues there are two such exceptions: (i) the discovery rule and (ii) the continuous accrual doctrine. JEC is wrong on both counts.

**A.      The Discovery Rule Does Not Apply.**

A contractual limitation provision constitutes a waiver of the discovery rule. *Wind Dancer Production Group v. Walt Disney Pictures*, 10 Cal.App.5th 56, 75-76 (2017) ("We conclude that the producers waived the benefit of the discovery rule by contractually agreeing to a shortened limitations period with a specified date of accrual."); *Brisbane Lodging, L.P. v. Webcor Builders, Inc.*, 216 Cal.App.4th 1249, 1259-1263 (2013); *Board of Trustees v. Santa Cruz Underground & Paving, Inc.*, 2022 U.S. Dist. LEXIS 114274, *21-25 (N.D.Cal. June 28, 2022); *Evox Prods. LLC v. Chrome Data Solutions*, 2018 U.S. Dist. LEXIS 197882, * 42-43 (D.Or. Sept. 6, 2018) (applying California law).

The court in *Brisbane Lodging* explained why a contractual limitation provision constitutes a waiver of the discovery rule. *Brisbane Lodging,* 216 Cal.App.4th at 1259. The court cited "numerous out-of-state authorities" that

have "concluded the provision altered the normal rules governing accrual of causes of action, including the delayed discovery rule . . . ." *Id.* The court then adopted the reasoning of those out-of-state cases.

> Like the out-of-state courts that have considered this provision, we conclude that sophisticated parties should be allowed to strike their own bargains and knowingly and voluntarily contract in a manner in which certain risks are eliminated and, concomitantly, rights are relinquished. . . . [¶¶]
>
> . . . While Brisbane now decries the unfairness of a contract provision that may result in the loss of entitlement to sue for damages it did not discover in a timely fashion, this is precisely the arrangement to which it agreed.

*Id.* at 1261-1263.[2] The holding in *Brisbane Lodging* has been followed by other California courts and federal courts applying California law. *See e.g., Wind Dancer Production Group*, 10 Cal.App.5th at 75-76; *Board of Trustees,* 2022 U.S. Dist. LEXIS 114274, *21-25 (granting motion to dismiss without leave to amend); *Evox Prods. LLC,* 2018 U.S. Dist. LEXIS 197882, * 42-43.

JEC argues that these cases do not apply because the parties were in a "fiduciary" relationship. Opp. at 16:4-14. But JEC does not allege that the parties were in a "fiduciary" relationship, and JEC expressly *disavowed* any such relationship in Section 11 of the Design Agreement.

> In your capacity as a designer under this Agreement, including during any period in which you are not an employee of JANUS et Cie, each party hereto is an independent contractor with respect to the other, and shall not be deemed by virtue of this Agreement, or any act of any party pursuant hereto, to be in a joint venture, partnership, employment relationship or any other legal relationship with the other party, other than vendor and purchaser of the services described herein.

Exhibit A to FAC § 11. Moreover, in the Related Action, JEC alleged that the parties were in a "fiduciary" relationship (Dkt #42-2 at ¶¶ 2, 16, 80), but JEC *withdrew* that allegation and does *not* make it in this case.

Accordingly, the discovery rule does not apply.

---

[2] JEC does not argue or allege that it was an unsophisticated party with unequal bargaining power.

5
REPLY ISO MOTION TO DISMISS FIRST AMENDED COMPLAINT

### B. JEC Was on Notice of Its Claims Prior to August 9, 2020.

JEC claims that Feldman breached the Design Agreement "well before" 2019. Opp. at 15:26-28, fn. 2. JEC alleges that Feldman was JEC's CEO until December 31, 2020. FAC ¶ 17. Feldman was JEC's agent, and, thus, JEC was on notice of Feldman's alleged breaches as soon as they occurred. *Baxter v. California State Teachers' Retirement System*, 18 Cal.App.5th 340, 366-368 (2017) (holding that claims accrued at the moment the principal's agent was on notice of facts giving rise to the claims). So even if the discovery rule applied, which it does not, JEC's claims would still be barred under Section 5(c).

### C. The Continuous Accrual Doctrine Does Not Apply.

JEC argues that the continuous accrual doctrine applies because "Feldman triggered a new contractual limitation period each time she submitted a request for approval of a non-qualifying design or a demand that royalties be paid to her in breach of her obligations under the Design Agreement." Opp. at 17:18-19. JEC also argues that "each time" Feldman "accepted payments of royalties based on those improper requests," she breached the contract. Opp. at 19:24-26. JEC is wrong for the following two reaons:

#### 1. JEC Does Not Allege That Feldman Submitted a Request for Approval of Any Designs After August 9, 2020.

In support of its claim that Feldman "submitted a request for approval of a non-qualifying design" after August 9, 2020, JEC cites paragraphs 47-51 of the FAC. But none of those paragraphs contain any allegation that Feldman submitted any designs after August 9, 2020. FAC ¶¶ 47-51.

#### 2. JEC's Claim to Recover "Improper" Payments It Made to Feldman Is Barred Because Its Claim That Such Payments Were "Improper" Is Barred.

JEC argues that the continuing accrual doctrine allows it to recover "improper" royalty payments made to Feldman after August 9, 2020 because

Feldman's demand for and acceptance of those "improper" payments was a breach of contract occurring within the limitation period. Opp. at 17:17-24; 19:20-20:11.

But it is *that* claim – the claim that the payments were "improper" – that is barred, and, once that claim is barred, so too are all claims that are dependent on it. *Dillon v. Board of Pension Commrs.*, 18 Cal.2d 427, 431 (1941); *County of San Diego v. Myers*, 147 Cal.App.3d 417, 422 (1983); *Carrick v. San Francisco*, 202 Cal.App.2d 402 (1962). As the court in *Myers* held, "Consequently, even though a pension is an obligation payable in periodic installments, the right to entitlement must be established within the applicable period of limitations or otherwise all pension rights are barred, including installments falling due in the future." *Myers*, 147 Cal.App.3d at 422.

In *Dillon*, the surviving spouse of a policeman who had committed suicide made an application to the pension board for a widow's pension, which was denied. More than three years later, she filed an action to compel the board to pay her the pension amounts that had come due during the limitation period. *Dillon*, 18 Cal.2d at 429. The court held that her claim was barred.

> Before plaintiff can claim these periodic payments, however, she must establish her right to a pension. . . . An action to determine the existence of the right thus necessarily precedes and is distinct from an action to recover installments which have fallen due after the pension has been granted. . . .
>
> The cause of action to establish the right to a pension accrued to plaintiff at the time of her husband's death. . . . [A] claimant cannot delay the running of the statute of limitations by postponing the time of demand upon the proper officials; the statute therefore begins to run at the time when the plaintiff first had the power to make such demand.

*Id.* at 430-431. In other words, the action for pension payments, even ones that would have come due during the limitation period, was barred because the limitations period had already run on any claim to establish the underlying right to the pension. *Id.* at 431.

The same is true here. JEC's claim for recoupment of royalty payments that were made after August 9, 2020 is barred because the case to establish that such payments were not owed had to be brought within two years of when JEC "first had the power" to bring it, which was when Feldman submitted the designs to JEC for approval. And, as noted above, JEC does not allege that Feldman submitted any designs after August 9, 2020. Therefore, JEC's claim to recover "improper" payments is barred by Section 5(c).[3]

### D. If the Continuous Accrual Doctrine Applied, Which It Does Not, Then Section 5(c) Would Require Dismissal of JEC's Claims to the Extent They Accrued Before August 9, 2020.

The continuous accrual doctrine applies only to claims that accrue within the limitation period. *Aryeh v. Canon Business Solutions, Inc.,* 55 Cal.4th 1185, 1199-1120 (2013). If applicable, the doctrine would permit JEC to sue only for those acts occurring after August 9, 2020. *Id.* JEC accepts and stresses this point. Opp. at 17:20-24. Therefore, if the doctrine applied (which it does not), JEC's pre-August 9, 2020 claims would be time-barred and must be dismissed. *Rivera v. Peri & Sons Farms, Inc.*, 735 F.3d 892, 902 (9th Cir. 2013) ("The district court properly dismissed the state constitutional claims to the extent they accrued more than two years before the farmworkers filed suit.")

### III. Section 6.05 and Section 5(c) Bar JEC's Third Claim.

JEC argues that Section 6.05 and Section 5(c) do not apply to its Third Claim for Relief for violation of Penal Code section 496. Opp. at 20:13-21. JEC argues that Section 6.05 does not apply because "JEC is not alleging that Feldman breached the Employment Agreement." *Id.* JEC argues that Section

---

[3] This is what distinguishes the instant case from *Aryeh v. Canon Business Solutions, Inc.*, 55 Cal.4th 1185 (2013); *Howard Jarvis Taxpayers Ass'n v. City of La Habra*, 25 Cal.4th 809 (2001) and *Baxter v. California State Teachers' Retirement System*, 18 Cal.App.5th 340 (2017). In those cases, the plaintiff's underlying entitlement to the money had previously been established and was not in dispute.

5(c) does not apply because the claim is not for "breach" of the Design Agreement. *Id.* JEC is wrong on both points.

As noted above, Section 6.05 is not limited to claims for "breach" of the Employment Agreement. It applies to any action "relating to" Feldman's employment. Exhibit 1 to RJN at § 6.05. Similarly, Section 5(c) is not limited to claims for breach of the Design Agreement. It applies to any suit "in connection with" a breach of the Design Agreement. JEC explicitly basis its Third Claim for Relief on the same facts that form the basis for its entire case. FAC ¶¶ 69-74. Thus, the Third Claim relates to Feldman's employment just as much as its other claims do, and it is explicitly "in connection with" a breach of the Design Agreement because, if Feldman did not breach the Design Agreement, then the Third Claim would fail. *See, e.g., Thurman*, *supra,* 397 F.3d at 359 (applying a "relating to" provision in the plaintiff's employment contract to a loss of consortium claim because "Mr. Thurman's claim is derivative and thus 'stands or falls on the primary claims in the complaint.'")

### IV. Section 6.05 and Section 5(c) Bar JEC's Fourth Claim.

Actions for declaratory relief must comply with the statutes of limitations. *Macguire v. v. Hibernia S. & L. Soc.*, 23 Cal.2d 719,733 (1944). It is the "nature of the right sued upon and not the form of action nor the relief demanded" that determines the applicability of the statute of limitations. *Id.* "Thus, if declaratory relief is sought with reference to an obligation which has been breached and the right to commence an action for 'coercive' relief upon the cause of action arising therefrom is barred by the statute, the right to declaratory relief is likewise barred." *Id*. at 734; *see also Snyder v. California Ins. Guarantee Assn.,* 229 Cal.App.4th 1196, 1208 (2014) ("An action for declaratory relief may be brought . . . in no event later than the applicable time period following the breach.")

JEC's declaratory relief claim is based on alleged breaches of the Design

9
REPLY ISO MOTION TO DISMISS FIRST AMENDED COMPLAINT

Agreement. FAC ¶¶ 76-80. Therefore, Section 6.05 and Section 5(c), which bar the breach claims, likewise bar the claim for declaratory relief.

## V. JEC's Third Claim Must Be Dismissed Pursuant to FRCP 9(b) and 12(b)(6).

### A. JEC Must Comply with Rule 9(b).

JEC argues that it need not comply with Rule 9(b) because its Third Claim is not a claim for fraud. Opp. at 20:22-21:27. JEC is wrong. JEC uses the words "fraud," "fraudulently," "fraudulent" and "defraud" in this claim. FAC ¶¶ 70, 73. JEC cites the portion of Penal Code section 484 that reads as follows: "Every person . . . who shall knowingly and designedly, by any false or *fraudulent* representation or pretense, *defraud* any other person of money, labor or real or personal property . . . . is guilty of theft." *Compare* FAC ¶ 73 to Cal. Pen. Code § 484 (emphasis added).

For Rule 9(b) to apply, the claim need not be a literal claim for "fraud." *Vess v. Ciba-Geigy Corp.* USA, 317 F.3d 1097, 1103 (9th Cir. 2003). Rule 9(b) applies to any "averments of fraud," even if fraud is "not an essential element of the claim." *Id.* (holding that Rule 9(b) applied to claims under the California Consumers Legal Remedies Act, Cal. Civ. Code § 1750 et seq., and California's unfair business practice laws, Cal. Bus. & Prof. Code §§ 17200, 17500).

JEC also suggests that its allegations of "false statements" and "false pretenses" are not "averments of fraud." Opp. at 21:21-27. But "false statements" and "false pretenses" are types of fraud and are subject to the requirements of Rule 9(b). *Guardian Fin. Co. v. Metzger,* 2018 Bankr. LEXIS 3335, *8-9 (S.D.Oh. September 4, 2018) ("To comply with Civil Rule 9(b), when pleading false pretenses or false representation a plaintiff must allege the 'time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud.'")

**B.     JEC's Third Claim Does Not Comply with Rule 9(b) Nor State a Claim Upon Which Relief Can Be Granted.**

JEC claims that it has alleged a specific false representation in paragraph 47 of the FAC. But, again, that is not true. In paragraph 47, JEC alleges that each time Feldman either (i) submitted a design, (ii) requested payment or (iii) accepted payment, "Feldman breached the Design Agreement and violated her express representations and warranties therein . . . ." FAC ¶ 47. That is an allegation of breach of contract, not fraud. JEC also cites paragraphs 48-51 of the FAC, in which JEC alleges that Feldman made demands and requests for payments that JEC claims that she was not entitled to. But a demand or request for payment is not a false statement of fact, and JEC does not even allege what Feldman actually said.

JEC argues that the warranty in Section 9 of the Design Agreement is a false representation. But, as Feldman explained in the Motion, the law is "well established that actionable misrepresentations must pertain to past or existing material facts." *Cansino v. Bank of America*, 224 Cal.App.4th 1462, 1469 (2014). The warranty in Section 9 is a promise of future performance – that the designs "to be provided" will be created solely by Feldman. Exhibit A to FAC, § 9. It is not a representation of past or existing material fact.

Finally, JEC claims that Feldman made a false statement "at least implicitly" every time she insisted that JEC pay her royalties for sales of approved designs that JEC continued to sell. Opp. 23:1-4. JEC argues that one party's demand that the *other* party perform *its* obligations constitutes theft by fraud if the party making the demand has herself breached the contract in bad faith. *Id.*

But JEC cites no authority for such a proposition, and it is contrary to long-standing California Supreme Court law. *Erlich v. Menezes*, 21 Cal.4th 543, 550-552 (1999); *Freeman & Mills, Inc. v. Belcher Oil Co.*, 11 Cal.4th 85,

102 (1995).  This issue was put to rest 28 years ago, when the California Supreme Court overruled *Seaman's Direct Buying Service, Inc. v. Standard Oil Co.*, 36 Cal.3d 752 (1984) in *Freeman & Mills, Inc. v. Belcher Oil Co.*, 11 Cal.4th 85, 102 (1995).  "Yet, to include bad faith denials of liability within *Seaman's* scope could potentially convert every contract breach into a tort. . . ." *Id.* at 103.  The court was not going to allow that.  *Id.* at 102-103.

> . . . *Seaman's* should be overruled in favor of a general rule precluding tort recovery for noninsurance contract breach, at least in the absence of violation of "an independent duty arising from principles of tort law" other than the bad faith denial of the existence of, or liability under, the breached contract.

*Id.* (citation omitted).

In sum, the fact that Feldman denied that she breached any contract, even if in bad faith, and continued to demand that JEC pay her for still-approved products that JEC continues to sell, does not give rise to claim for theft by fraud *or any other tort*.

## VI.   Conclusion

For all of these reasons, and for the reasons stated in the motion, the Court should grant the Motion to Dismiss without leave to amend.

DATED:  October 2, 2023

LAW OFFICES OF STEPHEN S. SMITH, P.C.

By: */s/ Stephen S. Smith*
STEPHEN S. SMITH (SBN 166539)
Attorney for Janice Feldman